LEE, Justice,
for the Court:
Bible Ministry Association (BMA) filed suit in the Chancery Court of Warren County against King Merritt, Jr., and Miriam Merritt, Co-executors of the Last Will and Testament of King Merritt, Sr. (Merritt), seeking to cancel a deed of trust on certain lands and promissory notes secured by the deed of trust. After a full hearing, the chancellor, Honorable Nat W. Bullard, dismissed the bill of complaint. BMA has appealed, and the executors have cross-appealed.
Appellant assigns three (3) errors in the trial below, which may be condensed into the question of whether the lower court erred in holding that a written instrument, upon which the suit lies, is in violation of the mortmain statutes and whether the lower court erred in declining to enforce said instrument executed contemporaneously with a deed of trust on lands involved, securing promissory notes.
There is little dispute in the facts of the case. Merritt was a wealthy man, but in September, 1977, and prior thereto, was in poor health. He became interested in the Kingdom of Christ on earth and talked with Mr. Wayne Peters (Peters) concerning such interest. Merritt desired to contribute to a bible ministry and encouraged Peters to organize BMA and obtain a non-profit charter for same. After the organization of BMA, on September 12, 1977, Merritt conveyed to it one hundred (100) acres of land in Warren County and, contemporaneously, for tax benefits to himself, had BMA execute a deed of trust to him in the sum of two hundred thirty thousand dollars ($230,-000), evidenced by seven (7) promissory notes of thirty-two thousand eight hundred fifty-seven dollars fourteen cents ($32,-857.14), each payable seriatim beginning December 31, 1977. On the same date, he wrote a letter to Peters setting forth an agreement between them with reference to the transaction, which follows:
“9-12-77
Mr. A. W. Peters
Bible Ministry Association
Raymond, Mississippi 39154
Dear Mr. Peters:
I have this date sold to the Bible Ministry Association certain farm lands to be used for associational religious work. This sale was for $230,000.00, consisting of seven promissory notes of $32,857.14 each, one due on December 31, 1977, and one due each year thereafter on December 31st until the entire balance is paid.
I hereby agree that as long as you personally remain with the association and it continues the work for which it was created, I will cancel each of these notes without payment to me as it becomes due. I have provided in my will that the balance due at my death shall be cancelled as a contribution to the association.
Sincerely yours,
/s/ KING MERRITT
King Merritt
KM:af”
Several months later, Merritt improved in health to some extent and desired to reacquire the property. He approached Peters with the proposition that BMA reconvey the .100 acres of land to him in exchange for cancellation of the notes and deed of trust. He further agreed to convey to BMA ten (10) acres of the property free of liens, and donate to BMA fifty percent (50%) of the proceeds received from sale of the remaining ninety (90) acres. The transaction was agreed upon and the property was recon-veyed to Merritt who, on March 17, 1977, conveyed the ten (10) acres to BMA pursuant to said agreement. However, for tax purposes, he requested that BMA execute five (5) notes payable to him, aggregating twenty thousand dollars ($20,000) secured by deed of trust on the ten acres of land and payable seriatim in the sum of five thousand dollars ($5,000) each, beginning *643 March 17, 1979. Contemporaneously with the execution of the notes and deed of trust, on March 17, 1978, he wrote Peters a letter confirming their agreement as follows:
“March 17, 1978
Mr. A. W. Peters
Bible Ministry Association
Bovina, Mississippi
Dear Mr. Peters:
I have this date sold to the Bible Ministry Association ten acres of land to be used for associational religious work. This sale was for $20,000.00, consisting of four promissory notes of $5,000.00 each, one due on March 17, 1979, and one due each year thereafter on March 17th until the entire balance is paid.
I hereby agree that as long as you personally remain with the association and it continues the work for which it was created, I will cancel each of these notes without payment to me as it becomes due. I have provided in my will that the balance due at my death shall be cancelled as a contribution to the association.
Sincerely yours,
/s/ KING MERRITT
King Merritt
KM:jc”
The letters of September 12, 1977 and March 17,1978, were practically identical in language, each consisting of two short paragraphs of five (5) lines. The agreements were to the effect that, as the notes became due, Merritt would cancel them without payment as long as Peters personally remained with the association and continued the work for which it was created. In each agreement, Merritt also stated that he had provided in his will that the balance due on the notes be cancelled at his death as a contribution to the association.
Merritt died May 27, 1978, seventy-one (71) days after the execution of the March 17, 1978 notes, deed of trust and letter agreement. King Merritt, Jr. and Miriam Merritt qualified as co-executors of the Last Will and Testament of King Merritt, Sr., and the court admitted to probate a Last Will and Testament of King Merritt, Sr. The will, presented by the co-executors, consisted of seven (7) typed legal pages, executed January 11, 1978, and a codicil of two (2) typed legal pages, executed January 19, 1978. There was no provision in the will or codicil for cancellation of the March 17, 1978 deed of trust and notes. The executors declined to cancel them and BMA filed its bill of complaint to have its agreement with Merritt honored and enforced. BMA prayed that the court cancel of record the deed of trust and the promissory notes secured by it.
The appellees filed a motion to dismiss the bill of complaint on an affirmative defense that the March 17, 1978, letter agreement was void under the mortmain statutes, since it was executed less than ninety (90) days prior to the death of Merritt, and not in accordance with the will laws of the State of Mississippi.
The pertinent statute on the question presented here is Mississippi Code Annotated Section 91-5-31 (1972) which provides the following:
“No person leaving a spouse or child or descendant of a child shall, by will, bequeath or devise more than one third of his estate to any charitable, religious, educational, or civil institution to the exclusion of such spouse or child or descendant of such child. In all cases the will containing such bequest or devise must be executed at least ninety days before the death of the testator, or such bequest or devise shall be void.” (Emphasis added)
The above section tracks Section 270, Miss.Const.1890, which states, in part:
“Section 270. No person leaving a spouse or child, or descendant of child shall, by will, bequeath or devise more than one-third of his estate to any charitable, religious, educational or civil institutions, to the exclusion of such spouse or child, or descendants of child and in all cases the will containing such bequest or devise must be executed at least ninety days before the death of the testator, or such bequest or devise shall be void.” (Emphasis added)
*644 The chancellor held that there was no connection between the September 12, 1977 letter agreement and the March 17, 1978 letter agreement and that the deed executed March 17,1978 was a separate gratuity. He further found that the March 17, 1978 letter agreement was in contravention of the mortmain laws of Mississippi (set forth above) for the reason that Merritt died May 27, 1978, within the ninety-day period. The letter agreement, therefore, was unenforceable. Following the opinion, he dismissed the bill of complaint.
The question presented here was answered in Crook v. Commercial National Bank and Trust Co., 375 So.2d 1006 (Miss.1979), where the Court said:
“It should be noted at this point that there is no prohibition against making a gift of land to a charitable, religious, educational or civil institution during a person’s lifetime or to create an inter vivos trust with land therein for the benefit of any one or more of those institutions.” 375 So.2d at 1009.
We are of the opinion the September 12, 1977 transaction was valid, and was connected with the March 17, 1978 agreement. The consideration for cancelling the September 12, 1977 agreement was execution of the deed of conveyance by Merritt conveying debt free to BMA the ten acres of land, and paying unto BMA one-half (Vfe) the proceeds from sale of the ninety acres, which resulted in a forty-five thousand dollar ($45,000) payment to BMA. The $20,000 note indebtedness secured by the deed of trust was to enable Merritt to receive tax benefits.[1]
The March 17, 1978 letter, when considered conjunctively with the deed of trust and notes executed on that date, and the previous transaction of the parties on September 12,1977, constituted a valid and binding contract between the parties and is enforceable as such. The reference in Paragraph 2 of the letter agreement that Merritt had provided in his will for the cancellation of the notes at his death did not render the instrument testamentary in character nor did it bring the instrument within our mortmain statutes. On the contrary, we construe the reference in the last sentence of the letter agreement, i. e., that Merritt had provided by will for cancellation of the balance due at his death as a contribution to the association, to be an agreement that the balance due be cancelled at Merritt’s death. The chancellor erred in applying the law to the facts and holding that the instrument was void under the mortmain statutes.
CROSS-APPEAL
Appellees cross-appeal and contend that, if BMA established the March 17,1978 letter agreement, its claim is barred under Mississippi Code Annotated Section 91 — 7— 151 (Supp.1976) which states:
“All claims against the estate of deceased persons, whether due or not, shall be registered, probated and allowed in the court in which the letters testamentary or of administration were granted within ninety (90) days after the first publication of notice to creditors to present their claim. Otherwise, the same shall be barred and a suit shall not be maintained thereon in any court, even though the existence of the claim may have been known to the executor or administrator.” (Emphasis added)
BMA does not claim that the estate of Merritt is indebted to, or owes it, money. BMA simply denies that it is indebted to the Merritt estate and contends that the deed of trust affecting its property should be cancelled as a cloud on title. If the estate had a valid claim against BMA, which was denied, the estate would be required to institute proceedings to collect the indebtedness. The opposite is not true here as to BMA. The argument of appellees is not supported by Section 91-7-151, and is without merit. Reedy v. Alexander, 202 Miss. 80, 30 So.2d 599 (1947).
*645 REVERSED AND RENDERED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.
PATTERSON, C. J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.

. The original indebtedness for tax purposes to Merritt was $230,000, payable in seven (7) note installments of $32,857.14 each, when 90 acres of the property sold on March 17, 1978 for only $90,000.